485 A.2d 245

**Donald Thomas MAZIARZ**

v.

**STATE of Maryland.**

**No. 2 and 22, Sept. Term, 1984.**

Court of Appeals of Maryland.

Dec. 21, 1984.

George E. Burns, Jr., and Mark Colvin, Asst. Public Defenders, Baltimore (Alan H. Murrell, Public Defender, Baltimore, on brief) for appellant.

Jillyn K. Schulze, Asst. Atty. Gen., Baltimore (Stephen H. Sachs, Atty. Gen., Baltimore, on brief), for appellee.

Argued before MURPHY, C.J., SMITH, ELDRIDGE, COLE, RODOWSKY and COUCH, JJ., and W. ALBERT MENCHINE, Associate Judge of the Court of Special Appeals (retired), Specially Assigned.

RODOWSKY, Judge.

Appellant, Donald Thomas Maziarz (Maziarz), seeks reversal of his death sentence. In weighing mitigating versus aggravating factors the sentencing judge applied a standard of persuasion which placed a heavier burden on Maziarz than that authorized by statute. To rectify this error requires vacating the death sentence and remanding for a new sentencing proceeding on the verdict of guilty of capital murder.

The murder victim, Peggy Naomi Green (Green), died of smoke and soot inhalation in an arson started by Maziarz. They had not known one another prior to the events leading up to the murder. Maziarz and his codefendant, Kevin Keith Bennett (Bennett), had encountered Green and another female at a liquor store. Green invited the two men back to a small party at an apartment in Oxon Hill, Prince George's County, Maryland. Eventually only Green, Maziarz, and Bennett remained in the apartment where they drank, played cards, and danced. In his confession Maziarz describes what subsequently happened.

Green said that it was time for the two men to leave, but she continued dancing with, but at a short distance from,

Maziarz. Bennett "was getting all up next to" Green who bumped into Maziarz. Maziarz hit Green, knocking her and Bennett onto the couch. Green kicked Maziarz in the groin and he "really hit her back." When the victim said she would "give it up," Maziarz and then Bennett had intercourse with her in the living room. Then Bennett hog-tied Green with telephone cord and gagged her with a sock. In the bedroom Maziarz started a fire ("... I lit a cigarette and threw the match but they [*sic*] didn't go out.") and also set fire with a match to the living room couch. When a smoke detector sounded Maziarz punched it off the wall. Bennett and Maziarz stole a television set from the apartment and departed, leaving Green to die in a fire which became so intense that it melted the metal railing on the porch of the apartment on the floor above.

Bennett plea bargained. He plead guilty to first degree murder (felony murder-rape), first degree rape (by aiding and abetting Maziarz in rape), and robbery. On May 31, 1983, Judge Howard S. Chasanow in the Circuit Court for Prince George's County, acting consistently with the plea agreement, sentenced Bennett to two concurrent life sentences for the murder and the rape and to a consecutive ten-year sentence for robbery. There was no appeal.

Maziarz elected a nonjury trial. On November 10, 1983, Judge James M. Rea found Maziarz guilty of first degree murder.[1] The court also found Maziarz guilty of first degree rape as a principal in the first degree, first degree rape by aiding and abetting Bennett, robbery, and arson. Judge Rea sentenced Maziarz to death on the murder charge. He imposed a consecutive life sentence for the

---

1. Judge Rea's precise findings were as follows:
   [T]he Court is going to find you guilty of murder committed in perpetration of arson, which means murder in the first degree pursuant to Section 408 of the code.
   The Court is also going to find you guilty of murder in the perpetration of rape and robbery, pursuant to Section 410 of the code.
   The references are to Md.Code (1957, 1982 Repl.Vol.), Art. 27.

**4**

rape as a principal in the first degree, a concurrent life sentence for aiding and abetting Bennett's rape, and a ten-year consecutive sentence for robbery. The court imposed no separate sentence for arson which it viewed as merged in the death sentence. On this appeal Maziarz does not raise any issues which would affect the guilty verdicts. He does, however, raise multiple issues directed to the sentencing proceeding. Of these, we need only address two.

■ Maziarz argues that Judge Rea made findings at sentencing which compelled the sentence to be life, so that capital punishment here violates double jeopardy principles under *Bullington v. Missouri*, 451 U.S. 430, 101 S.Ct. 1852, 68 L.Ed.2d 270 (1981). The purported factual basis for the argument is a frivolous interpretation of the record. The sentencing proceeding took place between January 4 and 24, 1984. At the conclusion Judge Rea in open court and by reasoning aloud completed the form for findings and sentencing determinations in capital cases prescribed by then Maryland Rule 772A d (now MD.R. 4–343(e)). Section I of that form lists the ten statutory aggravating factors set forth in Md.Code (1957, 1982 Repl.Vol.), Art. 27, § 413(d). Judge Rea found the tenth aggravating factor, *i.e.*, that Maziarz had "committed the murder while committing or attempting to commit robbery, arson or rape or sexual offense in the first degree." The court then proceeded paragraph by paragraph through Section II of the form which deals with mitigating factors. He found an absence of prior convictions for crimes of violence, substantially impaired capacity to appreciate the criminality of the conduct, youthful age, and that Maziarz' act was not the sole proximate cause of Green's death. The court then directed attention to Section III of the form before him. It called for a yes or no answer to the following issue:

Based on the evidence I find that it has been proven by A PREPONDERANCE OF THE EVIDENCE that the mitigating circumstances marked "yes" in Section II out-

weigh the aggravating circumstances marked "yes" in Section I.

At the point in the transcript where Judge Rea reached Section III the court reporter began a new paragraph, the introductory sentence of which reads, "Now, the Court has had great problems with this case because now we come to Section 3." Immediately following in the transcript are the identical words of the Section III issue, but without quotation marks. Maziarz bases his double jeopardy argument on this portion of the transcript by interpreting the recital of the words of the form as a finding by the judge. Obviously the trial court was simply reading aloud from the form and was not making a finding. Indeed, the paragraph in the transcript on which Maziarz relies concludes with the actual finding, namely, "But I am not finding that [*i.e.*, mitigating outweigh aggravating] in your case; I am going to mark it 'no.'" Experienced trial counsel for Maziarz made no objection that the court was marking the form with a finding contrary to that which the court had orally announced and thereby apparently understood that Judge Rea had simply been reading the form aloud.

■ Maziarz' meritorious point is based on the February 15, 1984, report of the trial judge required by then Md.R. 772A f (now MD.R. 4–343(g)). The sentencer explained his conclusion that the four mitigating factors which he had found did not outweigh the aggravating factor. In relevant part the report reads:

> The Court would recommend the death sentence as being justified for the following reasons: That there has been no guidance by the legislature in the Death Penalty Act as to what weight should be given to the aggravating and mitigating circumstances. It would appear that *unless the mitigating circumstances are overwhelming, the death penalty is mandated* if any one of the aggravating circumstances is proven by the State. [Emphasis added.]

That analysis violates § 413(h) which reads as follows:

(h) *Weighing mitigating and aggravating circumstances.*—(1) If the court or jury finds that one or more of these mitigating circumstances exist, it shall determine whether, by a preponderance of the evidence, the mitigating circumstances outweigh the aggravating circumstances.

. . . .

(3) If it finds that the mitigating circumstances outweigh the aggravating circumstances, the sentence shall be imprisonment for life.

We have repeatedly said that the Maryland death penalty statute requires that a sentence of life imprisonment be imposed if, by a preponderance of the evidence, the sentencing authority finds that the mitigating circumstances outweigh the aggravating circumstances. *See Tichnell v. State,* 297 Md. 432, 443–44, 468 A.2d 1, 6–7 (1983) (*Tichnell* III); *Johnson v. State,* 292 Md. 405, 438, 439 A.2d 542, 560–61 (1982); *Tichnell v. State,* 287 Md. 695, 726, 415 A.2d 830, 846–47 (1980) (*Tichnell* I). The standard applied by the trial court, whereby death is said to be "mandated" unless the mitigating circumstances are "overwhelming," grossly distorts the statute to the prejudice of the accused. We must therefore vacate the death sentence and remand for new sentencing proceedings on the verdict of guilty under Count I of the indictment, the first degree murder count on which the State gave notice that it was seeking the death penalty.

All but one of the remaining issues which Maziarz raises have either been mooted by our vacating of the death sentence, because those issues rest on factual peculiarities of the particular record before us, or are legal issues which may or may not be presented again, depending upon the outcome of the new sentencing proceeding. Falling somewhere between these two classes of issues is the contention that receiving the transcript of Bennett's sentencing before Judge Chasanow into evidence at Maziarz' sentencing proceeding before Judge Rea violated Maziarz' right to confrontation. Before Judge Chasanow, Bennett had given,

under oath, a narrative description of the crimes to show the factual basis of his guilty pleas. At the sentencing of Maziarz the State called Bennett to the stand but he refused to testify on grounds of self-incrimination. The State then called Bennett's attorney as a witness and she confirmed having advised Bennett not to testify, on grounds of self-incrimination, in the Maziarz sentencing. Ruling that Bennett was thereby unavailable as a witness, Judge Rea permitted the State, over objection, to introduce the transcript of Bennett's sentencing as an admission against penal interest. We intimate no view on the merits of the confrontation-hearsay questions. It is clear that the privilege against self-incrimination was not properly invoked by Bennett with respect to questions concerning those crimes for which unappealed judgments of conviction had been entered against him. *Cf. Smith v. State*, 283 Md. 187, 388 A.2d 539 (1978) (rule is otherwise where witness has plead guilty but has not yet been sentenced). Consequently, the confrontation issue will not necessarily arise on resentencing.

JUDGMENT OF CONVICTION AND SENTENCES AFFIRMED, EXCEPT AS TO THE IMPOSITION OF THE DEATH SENTENCE FOR MURDER; DEATH SENTENCE VACATED AND CASE REMANDED TO THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY FOR A NEW SENTENCING PROCEEDING UNDER § 413 OF ARTICLE 27.